IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| BERNARDINO SANTOS-RODRÍGUEZ, et. al., <br><br> Plaintiffs <br><br> v., <br><br> RAÚL VIERA-TORRES, et. al., <br><br> Defendants. | CIVIL NO.: 11-1602 (JAG) |

**REPORT AND RECOMMENDATION**

Pending before the court is plaintiffs' Urgent Motion for Attachment of Insurance Company Coverage Amount and Other Property, filed on August 19, 2011, and defendant Cooperativa de Seguros Multiples de Puerto Rico's ("Cooperativa" or "defendant") opposition.  (Dkt. Nos. 7, 12). Plaintiffs move the court pursuant to Puerto Rico Rule of Civil Procedure 56.1 to impose a provisional remedy to restrain the $300,000 insurance policy issued by Cooperativa to defendant Raúl Viera-Torres ("Viera").  A hearing on the matter was held on November 23, 2011.  After considering the arguments from both parties, it is recommended that the motion be denied for the reasons set forth below.

I.     **BACKGROUND**

The complaint in this action was filed on June 22, 2011, seeking compensation for injuries allegedly sustained by plaintiff Bernardino Santos-Rodríguez ("Santos") while riding as a passenger on a boat owned by defendant Viera and operated by co-defendant Marcelo Colón-López ("Colón"). (Dkt. No. 1, ¶¶ 1-11.)  The complaint alleges that Colón "caused or allowed" the vessel to accelerate suddenly, provoking Santos to lose his balance and fall, thereby sustaining various serious and permanent injuries.  (Dkt. No. 1, ¶¶ 22-23.)  Alternatively, plaintiffs posit a products liability theory

against co-defendant Sea Fox Boat Company and other unknown defendants, whom they allege negligently designed, manufactured, marketed, promoted, sold, and distributed a defective engine that caused the vessel to suddenly accelerate.[1]   (Dkt. No. 1, ¶¶ 31-44).   Plaintiffs also sue Cooperativa as the issuer of a $300,000 insurance policy held by Viera to cover liability and damages caused by his vessel.[2]   (Dkt. No. 4.)

Taking plaintiffs' complaint at face value, their damages are indeed, as they state in their motion, catastrophic, because Santos's injuries rendered him permanently paraplegic.   (Dkt. No. 1, ¶¶ 23-24.)   Santos claims compensatory damages for, *inter alia*, past and future medical expenses, loss of earnings, and physical and emotional pain and suffering.   (Dkt. No. 1, ¶ 24.)   The other plaintiffs, Glorimar Santos-Guzmán, Ángel Santos-Guzmán, Gregory Santos, and Milagros López, are Santos's family members who seek to recover for physical and mental pain and anguish that they allege resulted from by Santos's injuries and suffering.   (Dkt. No. 1, ¶¶ 26-27.)

The essence of plaintiffs' motion is that Santos's "immense physical and mental damages," and the limited amount of the insurance policy pose an "imminent threat" to his ability to collect the judgment that "most likely will be entered in his favor" due to defendants' "evident liability."   (Dkt. No. 7, p. 1-2.)   Therefore, they request a court-ordered restraint on the insurance policy, specifically, either attachment, prohibition on alienation, or an order to do or desist from doing.   (Dkt. No. 7, p. 2.)   At the hearing, plaintiffs also moved for attachment of Viera's and Colón's real estate, but did not provide any information as to the number and value of these properties.   Additionally, plaintiffs indicated that they were willing to post bond in the amount of $10,000 to cover any damages that

---

[1] Plaintiffs recently sought leave to amend their complaint to include a cause of action against Viera for failure to adequately maintain the vessel involved in the incident.   (Dkt. No. 32.)
[2] At the hearing, the parties informed the court that the policy covers up to $300,000 in damages per incident.

might arise from the attachment.

Defendant Cooperativa responds that imposition of a provisional remedy in this type of personal injury case is neither customary nor necessary, nor is there any precedent for doing so at either the federal or the state level. (Dkt. Nos. 12, 30.) They also argue that the parties' liability has yet to be adjudicated, as no evidence has been presented, and defendants' liability is not evident from the face of the complaint. (Dkt. Nos. 12, ¶9; 30.) Therefore, they submit that plaintiffs' request is premature. (Dkt. Nos. 12, ¶9.) They also assert that Cooperativa is financially healthy, and there is thus no imminent impediment to their ability to satisfy a possible judgment against it. (Dkt. No. 12, ¶ 6.)

At the hearing, plaintiffs clarified that they do not dispute Cooperativa's financial health; rather, their concern was that another litigant may have a claim to the same insurance policy. (Dkt. No. 30.) The parties informed the court that an individual named Martha Morales-Mercado ("Morales") had suffered injuries as a result of the same incident that is the subject of the present action and had filed a personal injury suit against Viera and Cooperativa in the Commonwealth of Puerto Rico Court of First Instance, Guayama Part. (Dkt. Nos. 12, ¶ 7; 30.) Plaintiffs alleged that Morales's injuries are minor compared to Santos's, and that it is thus necessary to prevent Morales from reaching the full amount of the insurance policy pending the outcome of both lawsuits. (Dkt. No. 30.) Cooperativa countered that it would be inequitable for one litigant to restrain a policy to which both have a pending claim. (Dkt. No. 12, p. 3.) They added also that Morales should have been notified of the hearing. (Dkt. No. 30.) Finally, defendants asserted that there may be an issue of a Medicare lien on any assets that Santos may acquire, and that this could unfairly hinder Morales's claim to the insurance policy. (Dkt. No. 30.)

3

Neither party has presented any evidence as to defendants' liability or the value of plaintiffs' damages, either at the hearing or together with their motions.  Additionally, neither party has brought to the court's attention any precedent indicating that this type of provisional remedy has been implemented in a personal injury case, either in Puerto Rico or in other jurisdictions.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 64 empowers federal courts to impose any provisional remedy available under the law of the state where the court is located to "seiz[e]  . . . property to secure satisfaction of the potential judgment." Fed. R. Civ. P. 64.[3]  Therefore, Rule 56 of the Puerto Rico Rules of Civil Procedure ("Rule 56"), which governs provisional remedies, contains the remedies that are available to plaintiffs.

### A.   Puerto Rico Rule of Civil Procedure 56

Rule 56 provides the court broad authority to "issue any provisional order it may deem necessary to secure satisfaction of the judgment."  P.R. Laws Ann. tit. 32 App. I, Rule 56.1 (2009). Therefore, while the rule specifies that remedies such as "attachment, garnishment, the prohibition to alienate . . . [and] an order to do or desist from doing any specific act" are available to a movant, the court is not limited to those remedies.  Id.; see also Piza Blondet v. Tribunal Superior, 103 D.P.R. 466, 3 P.R. Offic. Trans. 647 (1975) ("Rule 56 . . . does not curtail the conventional remedies and on the contrary comprises, without enumerating, 'any other measure which [the court] may deem advisable, according to the circumstances of the case.'") (quoting Suárez v. Superior Court, 85 D.P.R. 522, 527 (1962)).

---

[3] For purposes of this rule, the Commonwealth of Puerto Rico is deemed the functional equivalent of a state.  See, e.g., Goya Foods, Inc. v. Wallack Management Co., 290 F.3d 63, 70 (1st Cir. 2002) (citing HMG Prop. Investors, Inc., v. Parque Indus. Rio Canas, Inc., 847 F.2d 908, 912-13 (1st Cir. 1988)).

The standard for granting a provisional remedy is also a flexible one, requiring only that the court "consider the interests of all the parties and [ ] adjudicate as substantial justice may require." P.R. Laws Ann. tit. 32 App. I, Rule 56.1.  As this court has observed, the "Supreme Court of Puerto Rico has construed Rule 56 expansively," allowing the court "'sufficient flexibility to issue the measures which it deems necessary or convenient, according to the circumstances of the case, to secure the effectiveness of judgments.'"  Estate of Hevia v. Portrio Corp., 497 F. Supp. 2d 312, 314 (D.P.R. 2007) (quoting HMG Prop. Investors, Inc., 847 F.2d at 913-14).  The only limitations, then, on the court's power to fashion a provisional remedy are that "the measure be reasonable and adequate to [its] essential purpose," HMG Prop. Investors, Inc, 847 F.2d at 913, and take into account "the interests of all the parties," in accordance with "substantial justice."  P.R. Laws Ann. tit. 32 App. I, Rule 56.1; see also Piza Blondet, 3 P.R. Offic. Trans. at 647 ("In its scope [Rule 56] corresponds to a procedural design in whose execution the court shall consider the interests of all the parties.").

Additionally, the ensuing subsections of Rule 56 set forth various procedural requirements for obtaining provisional remedies.  P.R. Laws Ann. tit. 32 App. I, Rule 56.2-56.7.  For example, subsection 56.2 requires that adverse parties be notified and a hearing held before any provisional remedy can be issued.[4]  Subsection 56.4 provides, *inter alia*, that before an order of attachment or prohibition on alienation can be issued, the movant must post a bond in an amount sufficient to cover any damages that the remedy might cause to the property owner.  P.R. Laws Ann. tit. 32 App. I, Rule 56.3-56.4; see Marital Community Gutiérrez Flores v. Rodríguez Colón, 116 D.P.R. 468, 16 P.R.

---

[4] Rules 56.4 and 56.5 provide certain exceptions to the notice and hearing requirements, which are not relevant to the instant motion.

Offic. Trans. 572 (1985).  Additionally, an order of attachment or prohibition on alienation of real property is recorded in the Registry of Property, and when such remedy is imposed on personal property, that property is deposited with the clerk of court.  P.R. Laws Ann. tit. 32 App. I, Rule 56.4.

Apart from these procedural prerequisites, however, "flexibility is the hallmark of Rule 56." Goya Foods, 290 F.3d at 71.  The standard is best understood as a balancing test, requiring the court to weigh the property owner's interest against the need to protect the plaintiff's ability to recover for the wrongs alleged, along with the fairness considerations attendant to achieving "substantial justice."  Therefore, the court has significant discretion in applying this balancing test and deciding whether to impose a provisional remedy and if so, what remedy to impose.

### B.  Precedent from Other Jurisdictions

Although there is no decision from the Puerto Rico Supreme Court directly addressing whether provisional remedies may be issued in tort cases, there is ample precedent from other jurisdictions analyzing this question.[5]  See Monica E. McFadden, Provisional & Extraordinary Remedies, in 2 LITIGATING TORT CASES § 13:49 (Roxanne Barton Conlin & Gregory S. Cusimano, eds., 2011) (noting that a minority of states allow prejudgment attachment in tort cases and citing cases across jurisdictions).  While many of these jurisdictions have attachment statutes that differ from Puerto Rico's Rule 56, their underlying principles stem from fairness concerns that are relevant to Rule 56's "substantial justice" analysis.  Therefore, a distillation of these principles will help to guide the court's application of Rule 56's balancing test.

---

[5] At least one Puerto Rico Supreme Court case has allowed a prejudgment attachment in a personal injury case to stand, but the considerations weighed by the trial court in granting the attachment were not discussed, as the only issue before the court was the adequacy amount of bond the plaintiffs had posted.  See Marital Community Gutiérrez Flores v. Rodríguez Colón, 116 D.P.R. 468, 16 P.R. Offic. Trans. 572 (1985).

Most states prohibit or limit prejudgment attachment in tort cases because it is difficult to ascertain the plaintiff's damages and the defendant's liability prior to trial.  See 6 AM. JUR. 2D ATTACHMENT & GARNISHMENT §§ 47-48 (2011) (surveying practices across jurisdictions).  As such, "it is difficult to prove a need for security in light of the uncertain amount of damages that a jury is likely to award a plaintiff."  Martin v. Lincoln Bar, Inc., 622 A.2d 464, 468 (R.I. 1993).  This cautious approach is guided by procedural due process concerns that are triggered by this type of property deprivation.  See Connecticut v. Doehr, 501 U.S. 1 (1991) (holding that prejudgment attachment of property is a "deprivation" deserving of due process protections).[6]

Historically, prejudgment attachment was "confined to claims by creditors," wherein the plaintiff seeks to recover a specific sum and the defendant's liability can often be shown by undisputed documentary evidence.  Doehr, 501 U.S. at 17.  Many state statutes still restrict this remedy to actions to recover a "debt" or a "sum certain."  See McFadden, supra, § 13:49.  Most courts have held that a "debt" is a fixed sum, or one that can easily be computed, and thus does not include unliquidated tort claims.  See, e.g., In re Argyll Equities, LLC, 227 S.W. 3d 268 (Tex. App. San Antonio 2007) (noting that a "debt" within the meaning of attachment statute is a liquidated sum, but attachment may issue for unliquidated damages if they are easily ascertainable); Buob v. Ochs, 207 P. 2d 189, 190 (Wash. 1949) (recognizing that "in many states attachments may not be issued in tort cases . . . or for unliquidated claims . . . ").

---

[6] In Doehr, the Court applied the test set forth in Mathews v. Eldridge to decide if procedural due process had been provided to the party whose property was attached.  501 U.S. at 11 (citing Mathews v. Eldridge, 424 U.S. 319 (1976)).  This inquiry entails "first, consideration of the private interest that will be affected by the prejudgment measure; second, an examination of the risk of erroneous deprivation through the procedures under attack and the probable value of additional safeguards; and third . . . the interest of the party seeking the prejudgment measure."  Id.

Even in states where the attachment statute does not limit the remedy to debt recovery, courts have been reluctant to issue attachments in tort cases, unless the plaintiff's damages are readily ascertainable.  See, e.g., Cedar Rapids Lodge & Suites, LLC v. JFS Development, Inc., No. 09-CV0175-LRR, 2010 WL 1780760, at *5 (N.D. Iowa Apr. 29, 2010) (holding that, although Iowa state law may allow prejudgment attachment in tort cases, this remedy was "inappropriate in the instant action because Plaintiffs' damages are not reasonably ascertainable"); Hatch v. O'Brien, 772 F. Supp. 1326 (D.R.I. 1991) (noting that "few tort cases will be deemed appropriate for attachment" because the "amount of damages involved is ordinarily uncertain," but instant case was "exceptional" because statute mandated a minimum recovery of $100,000 in wrongful death actions).  In personal injury cases, the amount of damages is often highly fact-specific, and thus cannot be accurately predicted before any factfinding has taken place.  In jury trials, where damages for pain and emotional suffering are claimed, there is an added element of unpredictability.  When the amount of the final judgment is thus uncertain, it is difficult to determine what assets must  be restrained in order to ensure the effectiveness of that judgment.  Limiting attachment to cases where damages are easily calculable, therefore, reduces the risk that the defendant's assets will be erroneously restrained.

Additionally, many states also require a showing of some probability that the plaintiff will prevail on the merits before entering an attachment order.  See, e.g., Hatch, 772 F. Supp. at 1328 (Rhode Island statute requires a "showing that there is a probability of a judgment being rendered in favor of the plaintiff"); Doe v. Uhler, 200 N.J. Super. 522, 532 A. 2d 1133 (N.J. Super. L. 1987) (New Jersey statute requires "a probability that final judgment" will be entered in plaintiff's favor); Bowman v. Dussault, 425 A.2d 1325 (Me. 1981) (Maine statute requires a "reasonable likelihood that the plaintiff will recover the judgment . . . in an amount equal to or greater than the amount of

the attachment").  In most tort cases, it is difficult to forecast liability prior to trial, as this is a fact-sensitive inquiry that is contingent upon many factors.  See, e.g., Hatch, 772 F. Supp. at 1328 (noting that the instant case was exceptional, as plaintiff had presented documentary evidence showing that defendant was intoxicated when he struck plaintiff's decedent with his vehicle).  Requiring plaintiff to show a likelihood of success reduces the risk that a defendant who is ultimately absolved of liability will be unnecessarily deprived of property during the litigation.

The final factor that often weighs in the analysis is the seriousness of the risk that the plaintiff will not be able to execute the judgment.  In some states, prejudgment attachment is allowed, even where damages and liability are uncertain, if there is evidence the defendant's assets will be unreachable by the time the potential judgment is entered.  See, e.g., Mitsubishi Intern. Corp. v. Cardinal Textile Sales, Inc., 14 F.3d 1507, 1522 (11th Cir. 1994) (Georgia statute allows prejudgment attachment in tort cases when, *inter alia*, the defendant lives out of state, absconds, conceals himself, or moves assets out of state); see also In re Unanue-Casal, 144 B.R. 604, 612 (D.P.R. 1992) (moving party's interest in attaching debtor's property was strong in light of the fact that debtor had already removed assets from the United States).

## III.   ANALYSIS

Puerto Rico's Rule 56 does not, by its terms, limit any of the provisional remedies to certain types of actions, nor has the Puerto Rico Supreme Court imposed such a limitation.  Therefore, the remedies the plaintiffs request are theoretically available here, even though it is a personal injury case.  However, when weighing the interests of all the parties in accordance with "substantial justice" and due process concerns, the balance tips in defendants' favor.

9

### A.  Plaintiffs' Likelihood of Success on the Merits

In their motion, plaintiffs assert that liability in this case is "evident," (Dkt. No.7, p. 2); however, they presented no evidence of Viera or Colón's liability either in the motion or at the hearing.  (Docket Nos. 7, 30.)  Moreover, neither defendant's liability is evident from the face of the complaint.  As such, the court has no basis from which to determine that judgment is likely to be entered against Viera or Cooperativa in this case.

In their complaint, plaintiffs allege that Viera is strictly liable for any damages caused by his vessel pursuant to Title 12, Laws of Puerto Rico, Section 1395e(h).  (Dkt. No. 1, ¶ 29.)  Prior to its repeal, that section of law did indeed provide that an owner of a vessel was liable for culpable or negligent operation of that vessel by any third party.  See Peemoller Sultan v. Pleasure Craft Contender 25', 139 F. Supp. 2d 230, 237 (D.P.R. 2001).  However, that provision was repealed in 2001.  See Act of Dec. 21, 2000, No. 340, § 14, effective Jan. 1, 2001.  Plaintiffs have not cited any currently valid provision of law that imposes the same type of liability on vessel owners, nor is the court aware of any such law.  See P.R. Laws Ann. tit. 12, §§ 1401-1411 (governing navigation and aquatic safety, similar to repealed provisions §§ 1391-1397e).  Therefore, even assuming the truth of the basic allegation that the injuries occurred on a vessel owned by Viera, the court cannot assume that Viera will likely be held responsible for these injuries.

Additionally, the facts as narrated in the complaint leave open several possibilities as to the actual and proximate cause of Santos's injuries.  Plaintiffs' allege that Santos was injured as a result of the sudden acceleration of the boat.  However, they provide several possible explanations for this acceleration, e.g., that Colón drove negligently, that the boat's motor was defectively designed or manufactured, or that Viera failed to properly maintain the boat.  (Dkt. No. 1.)  Under some of these

10

scenarios Viera may not be liable, and plaintiffs thus would not be entitled to the insurance proceeds from Cooperativa.  See, e.g., Acosta-Mestre v. Hilton Intern. of Puerto Rico, Inc., 156 F.3d 49, 54-55 (1st Cir. 1998) (holding hotel not strictly liable to guest for injury caused by defectively manufactured chair because hotel was not part of the product's chain of distribution).  Moreover, plaintiffs have presented no evidence that Santos was acting with reasonable care at the time of the incident, and therefore it is possible that their recovery could be reduced due to his own negligence. See P.R. Laws Ann. tit. 31, § 5141.  At this early stage of litigation there are simply too many unknown variables to be able to predict whether Cooperativa or Viera or Colón will be held liable to plaintiffs.  Therefore, there is a high risk that attaching defendants' property would be unnecessary or erroneous.

### B.  The Amount of Plaintiffs' Damages

There is no evidence before the court as to the amount of damages that plaintiffs would likely recover if they prevail on the merits.  In their complaint, plaintiffs estimate Santos's damages to be "an amount in excess of ten million dollars," and each of the other four plaintiffs' damages as "an amount in excess of one million dollars."  (Dkt. No. 1, ¶ 45.)  There is no indication that these numbers are the result of calculations based on data regarding plaintiffs' actual losses.  Furthermore, plaintiffs' have not presented any documentary evidence of the extent of Santos's injuries, such as medical records.  As such, there is no information from which the court can accurately ascertain–or even estimate–the amount of plaintiffs' potential damages.

### C.  Plaintiffs' Likely Difficulty in Executing the Potential Judgment

Plaintiffs argue that the existence of a third party, Morales, with a possible claim to the same insurance policy "fosters an imminent threat to the effectiveness of the foreseeable judgment."  (Dkt.

11

No. 7, p. 2.)  Plaintiffs further assert that Santos's damages are more serious than Morales's, and thus

the policy proceeds should be restrained to be sure that they are not depleted before plaintiffs' case

is complete.  However, the parties have presented no evidence as to the relative strengths of Santos's

and Morales's claims, either regarding damages or liability.  Therefore, the court cannot determine

how likely it is that Morales will obtain a favorable judgment before plaintiffs do.  Additionally, it

makes it difficult to justify a court order reserving the policy proceeds for one litigant over another.[7]

Therefore, while it is conceivable that the insurance policy proceeds could depleted during the

pendency of plaintiffs' action, no real likelihood has been shown.  Moreover, there are other

procedural devices available to plaintiffs who assert that a party absent from the litigation claims an

interest in the subject of that action.  See, e.g., Fed. R. Civ. P. 19, 20.

Additionally, plaintiffs have not shown that there is any risk that Viera or Colón will dispose

of the real estate that plaintiffs wish to attach, aside from a bare assertion in their motion regarding

"the defendants' potential disposition of their assets."  (Dkt. No. 7, p. 1).  Therefore, consideration

of this factor weighs against ordering attachment, especially as to Viera and Colón's real estate.

**D.  The Amount of Bond Plaintiffs Must Post**

A party seeking a prejudgment order of attachment or prohibition on alienation must post a

bond sufficient to reimburse the damages that the attachment may cause to the owner of the seized

property.  P.R. Laws Ann. tit. 32 App. I, Rule 56.3-56.4.[8]  At the hearing, plaintiffs stated that they

---

[7] Defendants also argue that the attachment should not issue because Morales was not notified of the hearing as per Rule 56.2.  (Dkt. No. 30.)  That rule, however, only requires notice upon an "adverse party," P.R. Laws. Ann. tit. 32 App. I, Rule 56.1.  While Morales may be an adverse claimant to the insurance proceeds, she is not a party to this litigation.

[8] There are two exceptions to this rule, neither of which apply in this case; first, if there are signed and notarized documents in the record showing that the defendant owes a legally enforceable obligation to the plaintiff; and second, when 1) the plaintiff is indigent and thus exempt from the payment of court filing fees, 2) the court determines from the complaint that the cause of action "may evidently succeed," and 3) there are reasonable grounds to believe that the defendant will have no property left by the time judgment is rendered.  Rule 56.3(1)-(2).

are willing to post bond in the amount of $10,000.  However, plaintiffs provided no information from which the court can determine if this amount is sufficient to cover defendants' potential damages.

When setting attachment bonds, Puerto Rico courts must consider the following factors: "the usefulness of the property to be attached for the defendant; how solid are the grounds that prima facie support the plaintiff's claim; and if the security requested is the least onerous that may guarantee the effectiveness of the judgment which may be rendered."  Marital Community Gutiérrez Flores v. Rodríguez Colón, 116 D.P.R. 468, 16 P.R. Offic. Trans. 572 (1985) (quoting Vda. de Galindo v. Cano, 108 D.P.R. 277, 282 (1979)).  As discussed above, it is impossible to assess the second factor because plaintiffs have not presented any evidence that supports their claim.  Similarly, the first factor cannot be assessed with respect to Viera and Colón's real estate, because plaintiffs did not provide any information about it, such as its value and defendants' use of it.  There is little information on the record as to the "usefulness" of the insurance policy to Cooperativa or how the company's interests would be affected by the attachment.  However, setting a precedent allowing prejudgment attachment of insurance policy proceeds in any tort case, no matter the strength of the plaintiff's case, could have wide-ranging implications for the insurance industry as a whole.

Moreover, without any information as to the amount of plaintiffs' damages, it is difficult to determine whether the attachment requested is the least burdensome alternative that may be imposed to ensure the effectiveness of any judgment that may be entered in their favor.  With such scant information upon which to evaluate these factors, selecting a particular quantity for setting bond would constitute an arbitrary endeavor.

**IV.    CONCLUSION**

After considering all of the foregoing factors, the undersigned finds that plaintiffs' interest in securing the effectiveness of the potential judgment is outweighed by the possibility of an unnecessary and erroneous deprivation that could result from attaching defendants' property. Therefore, it is hereby RECOMMENDED that plaintiff's motion for attachment of the insurance policy coverage amount and other property be DENIED.

IT IS SO RECOMMENDED

The parties have fourteen (14) business days to file any objections to this report and recommendation.  Failure to file same within the specified time waives the right to appeal this report and recommendation.  Fed.R.Civ.P. 72(b)(2); Fed.R.Civ.P. 6(c)(1)(B), and Local Rule 72(d); <u>see also</u> 28 U.S.C. § 636(b)(1); <u>Henley Drilling Co. v. McGee</u>, 36 F.3d 143, 150-151 (1st Cir. 1994)**;** <u>United States v. Valencia</u>, 792 F.2d 4 (1st Cir. 1986).

In San Juan, Puerto Rico, this 30th day of December, 2011.

s/Marcos E. López
United States Magistrate Judge