**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| BERNADINO SANTOS RODRÍGUEZ, et al., | |
| Plaintiffs, | |
| v. | CIVIL NO. 11-1602 (MEL) |
| RAUL VIERA TORRES, et al. | |
| Defendants. | |

**OPINION AND ORDER**

## I.    PROCEDURAL HISTORY

On June 14, 2012 Bernadino Santos Rodríguez ("Santos"), minor G.S.G, minor F.S.G., Gregory Santos, and Milagro López (collectively "plaintiffs") filed second amended complaint pursuant to P.R. Laws Ann. tit. 31, § 5141 ("Article 1802"), claiming both diversity and maritime jurisdiction and alleging a cause of action for negligence against Raúl Viera-Torres ("Viera") and Marcelo Colón López ("Colón"), as well as Cooperativa de Seguros Múltiples de Puerto Rico ("Cooperativa"), as insurer of Viera and Colón, and for products liability against defendant SeaStar Solutions, formerly known as Teleflex Canada, Ltd. ("SeaStar" or "defendant"). ECF No. 82. Co-plaintiffs minor G.S.G, minor F.S.G., Gregory Santos, and Milagro López are all family relatives of Santos (the "Santos Family Members").  ECF Nos. 156, ¶ 2; 162, ¶ 2. On August 16, 2012 plaintiffs moved to voluntarily dismiss all claims against Viera, Colón, and Cooperativa, and on September 25, 2012 the court entered partial judgment dismissing all claims against them with prejudice. ECF Nos. 85, 88. Pending before the court is a motion for summary judgment filed by SeaStar, plaintiffs' response in opposition, SeaStar's

reply, and plaintiffs' surreply. ECF Nos. 155, 161, 166, 172. For the following reasons, the motion for summary judgment is granted.

## II.    SUMMARY OF MATERIAL UNCONTESTED FACTS

On or about June 25, 2010, Santos, along with Colón, Wilfredo O. Sandoz ("Sandoz") and Martha M. Mercado ("Mercado"), spent the day at Bahía Jobos, Guayama, Puerto Rico in a vessel that was the property of Viera and was captained and controlled by Colón. ECF Nos. 156, ¶ 3; 162, ¶ 3. None of the plaintiffs were the owner or operator of the vessel on June 25, 2010. ECF No. 162, at 6, ¶ 7. The only individuals aboard the vessel on June 25, 2010 were Santos, Colón, Sandoz, and Mercado. ECF Nos. 156, ¶ 8; 162, ¶ 8. The vessel had a Teleflex hydraulic steering system, model number HC5380, with a rod-end attachment manufactured by SeaStar in 2002 (the "Teleflex"). ECF Nos. 156, ¶ 4; 162, ¶ 4. The rod end of the Teleflex broke during the course of the voyage on June 25, 2010 and an accident occurred from which Santos sustained extensive injuries, resulting in paraplegia. ECF Nos. 156, ¶¶ 5-7; 162, ¶¶ 5-7.

The 2000 Revision M of the SeaStar / Teleflex Installation Instructions and Owner's Manual (the "Instruction Manual") was in effect at the time of manufacturing of the Teleflex. ECF Nos. 156, ¶ 13; 162, ¶ 13. The Instruction Manual contains warnings regarding corrosion of the "hydraulic hose steering," but it does not contain a specific warning regarding corrosion of the rod end of the Teleflex system or about "end of life" maintenance. ECF No. 162, ¶¶ 5-6. When Viera acquired the vessel second-hand, he did not request any maintenance log or maintenance documentation from the previous owner. ECF Nos. 156, ¶ 17; 162, ¶ 17. Viera did not read the warnings and / or stickers affixed to the Teleflex nor did he review the Instruction Manual. Id. Viera did not perform maintenance to the vessel himself or keep a maintenance log; the maintenance to the vessel was provided by third-party mechanics that Viera would retain or

hire. ECF Nos. 156, ¶¶ 17-18; 156, ¶¶ 17-18. Viera has no knowledge as to what type of maintenance or services were provided to the vessel by these mechanics. Id. During the course of the seven to eight years that Viera had the vessel, none of the mechanics that provided maintenance to the vessel brought to his attention that the rod end of the Teleflex needed to be replaced. ECF Nos. 156, ¶ 19; 162, ¶ 19.

Plaintiffs confirmed on March 31, 2013 that the Teleflex had been stolen and is nowhere to be found. ECF Nos. 156, ¶ 25; 162, ¶ 25. Plaintiffs' liability expert, Farhad Booeshaghi ("Dr. Booeshaghi"), did not physically inspect the Teleflex that was installed on the vessel on June 25, 2010 for preparation of his expert report. ECF Nos. 156, ¶ 26; 162, ¶ 26. Instead, Dr. Booeshaghi physically inspected an exemplar Teleflex product for preparation of his expert report. Id. The date of manufacture of the exemplar inspected was 1998 whereas the original Teleflex was manufactured in 2002. ECF No. 156, ¶ 27; 162, ¶ 27.

## III.   LEGAL STANDARD

The purpose of summary judgment "is to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." Wynne v. Tufts Univ. Sch. of Med., 976 F.2d 791, 794 (1st Cir. 1992). Summary judgment is granted when the record shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "'A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party. A fact is material if it has the potential of determining the outcome of the litigation.'" Farmers Ins. Exch. v. RNK, Inc., 632 F.3d 777, 782 (1st Cir. 2011) (quoting Rodríguez-Rivera v. Federico Trilla Reg'l Hosp., 532 F.3d 28, 30 (1st Cir. 2008)).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the movant presents a properly focused motion "averring 'an absence of evidence to support the nonmoving party's case[,]' [t]he burden then shifts to the nonmovant to establish the existence of at least one fact issue which is both 'genuine' and 'material.'" Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990) (quoting Garside v. Osco Drug., Inc., 895 F.2d 46, 48 (1st Cir. 1990)). For issues where the nonmoving party bears the ultimate burden of proof, that party cannot merely "rely on the absence of competent evidence, but must affirmatively point to specific facts" in the record "that demonstrate the existence of an authentic dispute." McCarthy v. Nw. Airlines, Inc., 56 F.3d 313, 315 (1st Cir. 1995). The plaintiff need not, however, "rely on *uncontradicted* evidence . . . . So long as the plaintiff's evidence is both cognizable and sufficiently strong to support a verdict in her favor, the factfinder must be allowed to determine which version of the facts is most compelling." Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004) (emphasis in original).

In assessing a motion for summary judgment, the court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Griggs-Ryan, 904 F.2d at 115 (citations omitted). There is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, [and] no room for the judge to superimpose his own ideas of probability and likelihood . . . ." Greenburg v. P. R. Mar. Shipping Auth., 835 F.2d 932, 936 (1st Cir. 1987). The court may, however, safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990) (citations omitted).

## IV.   ANALYSIS

### A.  Choice of Law

Federal maritime jurisdiction applies "in the territorial waters of Puerto Rico, which are navigable waters of the United States . . . ." Ortiz v. Zambrana, 809 F.Supp.2d 1, 6-7 (D.P.R. 2011). Indeed, "the First Circuit Court of Appeals has recognized that boating accidents are maritime torts within the admiralty and maritime jurisdiction of the federal courts . . . ." Nieto-Vincenty v. Valledor, 22 F.Supp.3d 153, 159 (D.P.R. 2014) (citing Medina v. Pérez, 733 F.2d 170, 171 (1st Cir. 1984)); see also Acadia Ins. Co. v. McNeil, 116 F.3d 599, n.2 (1st Cir. 1997) ("Since 'pleasure boats constitute an important part of maritime commerce,' admiralty jurisdiction extends to pleasure craft." (citing Sirius Ins. Co. (UK) Ltd. v. Collins, 16 F.3d 34, 37 (2d Cir. 1994)).

Although the parties appear to agree that the underlying claim is a maritime tort that renders admiralty jurisdiction applicable in this case, there is a dispute regarding which substantive law applies. Defendant asserts that the incident that gave rise to the case at bar "falls within the scope of a maritime tort" and, therefore, federal admiralty law applies to this case. ECF No. 155, at 8. The second amended complaint avers that the court has diversity jurisdiction to hear this action, and "[i]n the alternative, this case is governed by federal maritime law . . . ." ECF No. 82, ¶ 3 (citing 28 U.S.C. §§ 1332-33; Victory Carries, Inc. v. Law, 404 U.S. 202, 204 (1971)). In response to summary judgment plaintiffs contend that since it is their "job . . . to invoke the jurisdiction of the court," and they have invoked admiralty jurisdiction as an alternative to diversity jurisdiction in this case, Puerto Rico law controls. ECF No. 161. However, where jurisdiction is available both on diversity and maritime grounds, "[p]laintiff's choice of diversity jurisdiction rather than admiralty jurisdiction . . . does not determine the

substantive law that governs the case." Butler v. Am. Trawler Co., 707 F. Supp. 29, 31 (D. Me.) aff'd, 887 F.2d 20 (1st Cir. 1989) (citing Austín v. Unarco Industries, Inc., 705 F.2d 1, 8 n.3 (1st Cir. 1982) cert. dismissed, 463 U.S. 1247 (1983)); see also Carey v. Bahama Cruise Lines, 864 F.2d 201 (1st Cir. 1988) ("[T]he mere fact that the plaintiff invoked diversity of citizenship jurisdiction does not preclude the application of maritime law."); Friedman v. Cunard Line Ltd., 996 F.Supp. 303 (S.D.N.Y. 1998) ("Where a tort falls within admiralty jurisdiction, the general maritime law applies, even if the plaintiff's complaint pleaded diversity of citizenship as the sole basis for subject matter jurisdiction." (citing Wallstrom v. Kawaski Heavy Indutsries, Ltd., 4 F.3d 1084 (2d Cir. 1993)).

It is well-accepted that where the basis of the underlying claim is a maritime tort, substantive federal admiralty law applies. Butler, 707 F. Supp. At 31-32 ("In Carey, it was determined that admiralty law applies where substantive provisions of admiralty and common law conflict." (citing Carey, 864 F.2d 201; Pope and Talbot, Inc. v. Hawn, 346 U.S. 406 (1953))); see also Isla Nena Air Servs., Inc. v. Cessna Aircraft Co., 380 F. Supp. 2d 74, 81 (D.P.R. 2005) aff'd, 449 F.3d 85 (1st Cir. 2006) ("If admiralty jurisdiction is available, substantive admiralty law will apply even if plaintiffs alleged diversity jurisdiction in the complaint." (citing Hawn, 346 U.S. at 410-11)); Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 546 (1995) ("It is true that with admiralty jurisdiction comes the application of substantive admiralty law." (citing East River S.S. Corp. v. Transamerica Delaval, Inc., 476 U.S. 858, 865 (1986) (internal quotations omitted))); Fireman's Ins. Co. of Newark, N.J. v. Gulf Puerto Rico Lines, Inc., 349 F.Supp. 952, 960 (D.P.R. 1972) ("The fact that in maritime cases the court is to apply federal Maritime Law is a recognized principle of law."). Thus, given that the court has admiralty jurisdiction, substantive federal admiralty law governs

the controversies in this case.[1] However, "[w]here maritime law is silent, state law supplements the maritime law." Guarascio v. Drake Associates Inc., 582 F. Supp. 2d 459, 462 (S.D.N.Y. 2008) (supplementing admiralty law with New York law where gaps existed (citing Yamaha Motor Corp., U.S.A. v. Calhoun, 516 U.S. 199, 206 (1996))); see also Askew v. American Waterways Operators, Inc., 411 U.S. 325, 341 (courts in admiralty cases may reach beyond maritime precedents and apply state law "absent a clear conflict with federal law"); see also Floyd v. Lykes Bros. Steamship Co., 844 F.2d 1044, 1047 (3rd Cir. 1988) ("[S]tate law may not be applied where it would conflict with a [federal] maritime law.").

### B. Products Liability

#### i. Manufacturing Defect

In the second amended complaint, plaintiffs allege claims against SeaStar for defective manufacture, defective design, and failure to warn, all of which SeaStar moves to dismiss in its motion for summary judgment. See ECF Nos. 82; 155. In response, plaintiffs argue against dismissal of their negligent design and failure to warn claims; however, with regard to the manufacturing defect claim they state: "Although SeaStar may argue that it moved to dismiss any manufacturing defect claim that may be present in this case out of an abundance of care, wittingly or not, SeaStar incites the Court into believing that Plaintiffs are pursuing a

---

[1] Although plaintiffs have not cited any legal authority in support of their contention that they may choose between diversity and admiralty jurisdiction with regard to which substantive law applies, their position is in fact consistent with Fedorczyk v. Caribbean Cruise Line, Ltd., 82 F.3d 69 (3d Cir. 1996). In Fedorczyk, the Third Circuit Court of Appeals reasoned that because plaintiff is "the master of her complaint" she can avoid the application of general maritime law if an alternative basis for jurisdiction over the claim, such as diversity jurisdiction, exists. Id. at 73. This holding, however, stands in direct conflict with the position of the First Circuit Court of Appeals articulated in Carey, in which the plaintiffs had invoked diversity jurisdiction and wished to apply a state law contributory negligence rule. 864 F.2d 201. Because the case involved a maritime tort and the state law contributory negligence rule conflicted with the comparative negligence provision under substantive admiralty law, the First Circuit held that "the court should have applied the maritime rule" and disregarded the conflicting state provision. Id. at 207; see also Friedman v. Cunard Line Ltd., 996 F.Supp. 303, 306 (S.D.N.Y. 1998) ("[T]he Third Circuit regarded the plaintiff as 'the master of her complaint,' and allowed her to avoid general maritime law, even though admiralty jurisdiction apparently exists . . . . I think it is a doubtful proposition that parties, who cannot by their agreement vest a federal district court with subject matter jurisdiction that does not exist, can agree to divest the court of jurisdiction that unquestionably exists. If that is the Third Circuit's view, I am not bound by it.") (quoting Fedorczyk, 83 F.3d at 73).

manufacturing defect claim against it." ECF No. 161, at 5-6. Plaintiffs continue to state that their "products liability theory is based on design defects and failure to warn, not manufacturing defects," and assert that "[i]t is clear that any manufacturing defect claim initially made was subsequently abandoned with the submittal of the Joint Initial Scheduling Memorandum in March of 2014." Id. at 6. Moreover, in their surreply plaintiffs state that they have "no manufacturing defect claim before the [c]ourt" and in the proposed pretrial order plaintiffs indicate their manufacturing defect claim has been deemed waived. ECF No. 175, at 73. Because plaintiffs have made clear that they have abandoned their manufacturing defect claim, to the extent that it is alleged in the second amended complaint it is dismissed with prejudice.

## ii. Design Defect

Products liability claims are "part of the general maritime law." East River, 476 U.S. at 865. The substantive law in products liability cases arising under admiralty jurisdiction "is informed by the American Law Institute's Restatement of Torts." Oswalt v. Resolute Industries, Inc., 642 F.3d 856, 860 (9th Cir. 2011) (applying Restatement (Third) of Torts). As explained in Dehring v. Keystone Shipping Co., "[f]ederal admiralty law, like the Restatement of Torts, has gradually moved from the ephemeral consumer expectations test to the more concrete risk-utility test of the Restatement (Third)." No. 10-cv-13959, 2013 WL 3879619, at *3 (July 26, 2013 E.D. Mich.) (finding the plaintiff was incorrect that federal admiralty law only applies the products liability rules articulated in the Restatement (Second) of Torts); Regan v. Starcraft Marine LLC, Civil Action No. 06-1257, 2010 WL 996424, at *3 (March 27, 2010 E.D. La.) ("The applicable substantive law of products liability in admiralty is found in the Restatement (Third) of Torts."); Warford v. Industrial Power Systems, Inc., Civ. No. 06-cv-463-JL, 2008 WL 4642638, at *13 (D.N.H. Oct. 20, 2008) (applying Restatement (Third) of Torts to design defect claim in

admiralty case);  see also 1 Thomas J. Schoenbaum, Admiralty and the General Maritime Law, § 5-7 (5th Ed. 2014) (noting that Section 402A of the Restatement (Second) of Torts applies in admiralty cases, but that courts hearing products liability cases in admiralty have begun to supplement it with the Restatement (Third) of Torts).

> Section 402A of the Statement (Second) of Torts states:

>> One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm caused to the ultimate user or consumer, or to his property, if (a) the seller is engaged in the business of selling such a product, and (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

Restatement (Second) of Torts § 402A (1965). Under the Restatement (Third) of Torts, a product is defectively designed "when the foreseeable risks of harm posed by the product could have been reduced or avoided by the adoption of a reasonable alternative design by the seller or other distributor, or predecessor in the commercial chain or distribution, and the omission of the alternative design renders the product not reasonably safe." Restatement (Third) of Torts: Prod. Liab. § 2(b) (1998). Factors that are relevant to the consideration of whether the omission of a reasonable alternative design renders a product not reasonably safe include: the magnitude and probability of foreseeable risks of harm; instructions and warnings accompanying the product; the nature and strength of consumer expectations about the product; and the relative advantages and disadvantages of the product as designed and as it could have alternatively been designed. Id. at § 2 cmt. f. In order to create a genuine issue of fact, "[s]ufficient evidence must be presented so that reasonable persons could conclude that a reasonable alternative could have been practically adopted." Id.

Defendant asserts that plaintiffs' design defect claim should be dismissed, noting that Dr. Booeshaghi's expert report "does not identify the existence of any design defect in the Teleflex." ECF No. 155, at 15. Indeed, a review of Dr. Booeshaghi's opinion and conclusions reveals that he does not identify any aspect of the design of the Teleflex system as the cause of the incident. See ECF No. 162-4. Plaintiffs respond that Dr. Booeshaghi testified during his deposition that the material used for the rod end, Stainless Steel 303, was prone to corrosion and that Stainless Steel 316 has superior resistance to corrosion in a marine environment. ECF No. 161, at 9. The portions of Dr. Booeshaghi's deposition to which plaintiffs refers state:

> You can see that even the literature is very clear about that. That 303, because, because, in order to make it more machinable they add a component of sulfur to it, which is different than 304. In fact, if you look at most of the literature, they tell you 303 is not good [in a] marine environment. You should not use 303. But, again, this is a design choice. In fact, one of my students may have this as his design choice. But you got to work with what you decide. And, and that decision of using the 303 stainless steel. You've got to make sure that you work with that design. For example, the most popular one is 316, because 316 is a higher concentration of chromeo which gives you a better protective surface of corrosion. Anyway . . . .
>
> The 316, in fact, is a better quality product for marine environment. And by that virtue, definitely, washing it down, you know, the established literature or, or technical facts about the product, about its foreseeable use, creating a knowledge base for the people who come after, which, which are the inspectors, the mechanics, the owner, in order to have some understanding of the procurements of the selection of that material to the environment at which the, the product is design [*sic*] to perform.

ECF Nos. 162-1, at 115:11-23; 162-2, at 62:15-25.

Dr. Booeshaghi's expert report, however, does not mention that the Teleflex was composed of Stainless Steel 303 or 316, let alone that Stainless Steel 303, or any other component of the Teleflex design, is not well-suited to a marine environment or that Stainless

Steel 316 is a better choice for marine applications.[2] Dr. Booeshaghi was asked during his deposition: "So, so, your opinions in this case, just to be clear, your opinions in this case, the ones that you are going to testify about at trial, are the opinions and conclusions stated in your report of September 15, 2014?" ECF No. 156-6, at 83:2-5. He responded: "That's correct." Id. at 83:6. He also clarified that as of the date of his deposition the report dated September 15, 2014 was the only report he has rendered in this case and that it is his final report in this case, as well. Id. at 84:14-20.

Even more significant than Dr. Booeshaghi's own assertion that his expert report contains the opinions about which he plans to testify at trial is that the Federal Rules of Civil Procedure require that an expert report "contain: (i) a complete statement of all opinions the witness will express and the basis and reasons for them; [and] (ii) the facts or data considering by the witness in forming them . . . ." Fed. R. Civ. P. 26(a)(2)(B)(i)-(ii). "The purpose of the expert disclosure rule is 'to provide opposing parties reasonable opportunity to prepare for effective cross-examination and perhaps arrange for expert testimony from other witnesses.'" Rembrant Visiion Technologiez, L.P. v. Johnson & Johnson Vision Care, Inc., 725 F.3d 1377, 1381-82 (Fed. Cir. 2013) (citing Reese v. Herbert, 527 F.3d 1253, 1265 (11th Cir. 2008)). "Generally . . . Rule 26(a)(2) does not allow parties to cure deficient expert reports by supplementing them with later deposition testimony,' or the function of expert reports would be 'completely undermined.'" MMG Ins. Co. v. Samsung Electronics Am., Inc., 293 F.R.D. 58, 61 (D.N.H. 2013) (finding

---

[2] Dr. Booeshaghi's expert report does use the word "design" on two occasions. First, he indicates that he reviewed the "Teleflex design drawings" for purposes of rendering his expert report. ECF No. 162-4, at 1. He also states that "[a]s part of standard hierarchy in engineering design and manufacturing, the product manufacturer is required to warn against all foreseeable hazards . . . ." Id. at 5. The first use of the word design is not an opinion or conclusion of any kind, but merely a reference to materials he reviewed in reaching his opinions and conclusions. While the second reference to the word design is contained within the opinion section of Dr. Booeshaghi's report, viewed in context this portion of his report does not relate to an opinion regarding how the Teleflex was designed or should have been designed, but establishes his opinion regarding the standard of care as to what warnings are necessary with regard to any product.

supplemental deposition testimony insufficient to cure expert report's failure to disclose one of the bases of expert's opinion as to cause of a fire (citing Ciomber v. Coop. Plus, Inc., 527 F.3d 635, 642 (7th Cir. 2008))); see also Poulis-Minott v. Smith, 388 F.3d, 358 (1st Cir. 2004) ("The purpose of the expert disclosure rules is to facilitate a fair contest with the basic issues and facts disclosed to the fullest practical extent." (citations and internal quotation marks omitted)). Thus, based on the expert disclosure rule, courts routinely confine expert witnesses to testifying about the opinions that are contained within their original expert report or a timely-filed amendment or supplement. See, e.g., Carbo v. Chet Morrison Servs., LLC, No. CIV.A. 12-3007, 2013 WL 5774948, at *6 (E.D. La. Oct. 24, 2013) ("[T]hough Carbo has not indicated that he intends to supplement or amend Pazos' report, the Court notes, out of an abundance of caution, that such amendments are not permitted at this late stage of litigation. Therefore, Carbo is confined to his current expert report . . . ."); Bartlett v. Mutual Pharmaceutical Co., Inc., 731 F.Supp.2d 184, 188 (D.N.H. 2010) (granting judgment as a matter of law in part because expert's "opinion was expressed for the first time at his deposition, not in his expert report, and thus was not properly disclosed under Fed. R. Civ. P. 26(a)(2)(B)(i)"); Galaxy Ventures, LLC v. Rosenblum, No. CIV 03-1236 JH/LFG, 2005 WL 5988690, at *7 (D.N.M. July 21, 2005) ("Dr. McDonald's testimony at trial will be confined to the information and opinions expressed in his original expert report, dated July 21, 2004."); Medtronic Inc. v. Guidant Corp., No. CIV. 03-848-SLR, 2004 WL 5501181, at *1 (D. Del. Oct. 6, 2004) (granting *motion in limine* to confine expert witness testimony to opinions expressed in expert report).

When a party "fails to provide information . . . as required by Rule 26(a)," a party is "not permitted to use that . . . information . . . at a trial unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The tardy designation of expert evidence "impacts not

only the discovery deadline but also the court's and the parties' planning for summary judgment motions. Consequences such as this undermine a showing of harmlessness." <u>Goldenson v. Steffens</u>, No. 2:10-CV-440-JAW, 2012 WL 2603143, at *6 (D. Me. July 5, 2012) (citing <u>Poulis-Minott</u>, 388 F.3d at 358); <u>see also</u> <u>Walter Int'l Prods., Inc. v. Salinas</u>, 650 F.3d 1402, 1413 (11th Cir. 2011) ("The reason for requiring that an expert report be provided before the deposition is taken is so that the opposing party can use the report to examine the expert at deposition.").

Although defendant clearly points out that Dr. Booeshaghi's expert report does not mention the type of steel used in the Teleflex, in their response and opposition to summary judgment and surreply plaintiffs do not offer any explanation or excuse as to why the opinions of Dr. Booeshaghi upon which they rely as evidence for their design defect claim were not included in his expert report. The deposition transcripts in question indicate that Dr. Booeshaghi's deposition was taken on November 25, 2014 and December 2, 2014, over two months after plaintiffs' expert report on liability was due and over a month after the date upon which defendant's expert report was due, that is October 15, 2014.[3] <u>See</u> ECF No. 129, at 2. A review of the docket reveals that plaintiffs have not requested leave to amend or supplement Dr. Booeshaghi's September 15, 2014 expert report in this case.[4] As of today, any request to do so would be highly untimely, in view that all deadlines for discovery and to file dispositive

---

[3] The deadline to conduct depositions of expert witnesses on liability was November 7, 2014. <u>See</u> ECF No. 129, at 2. On October 29, 2014 the parties requested an extension of this deadline until December 31, 2014, in order to be able to conduct depositions on November 25, 2014 and December 23, 2014. ECF No. 153. The court denied the extension request, no motion for reconsideration or renewed request to move the deadline in question was filed, and the deadline was not otherwise extended. ECF No. 154.

[4] On January 20, 2015, plaintiffs did move to substitute their medical damages expert in this case, psychiatrist Dr. Néstor Cardona Cancio ("Dr. Cardona"). ECF No. 181. The request was denied because, among other reasons, at the time of the ruling trial was scheduled to commence on February 23, 2015 and plaintiffs failed to bring the matter motivating their request to the court's attention in a timely manner. <u>See</u> ECF No. 194. On February 9, 2015, at the Pretrial and Settlement Conference, plaintiffs' counsel informed the court for the first time that Santos would not be available to attend the trial beginning on February 23, 2015 due to medical reasons. <u>See</u> ECF No. 195, at 2-3. Taking into account this information and defendant's objection to having Santos testify at trial via videoconference, the court reluctantly moved the trial date. <u>Id.</u> Plaintiffs did not move the court to reconsider the denial of their motion to substitute Dr. Cardona in light of the additional time before trial.

motions have since expired. Dr. Booeshaghi's opinions regarding the relative benefits and drawbacks of using Stainless Steel 303 and 316 constitute a new theory of liability from that which is contained in his expert report.[5] Even if plaintiffs were now to request leave for Dr. Booeshaghi to supplement his export report at this late stage in the litigation, permitting him to testify about this matter at trial would not only require granting leave for him to supplement his expert report after SeaStar has incurred in the expense of filing the pending motion for summary judgment, but would likely also require the reopening of discovery to provide additional leave for defendant's expert to submit an amended or supplemental rebuttal report and the need for additional depositions to be taken, and potentially a renewed opportunity for SeaStar to file a dispositive motion regarding plaintiffs' design defect claim. Because Dr. Booeshaghi's expert report is silent with regard to the use of Stainless Steel 303 and plaintiffs have not moved for leave to allow him to amend or supplement it, he may not testify regarding his opinion about its use in the Teleflex design at trial. Plaintiffs have made no argument that its exclusion from his expert report is substantially justified, and such an argument would nevertheless be undermined

---

[5] At the Pretrial and Settlement Conference convened on February 9, 2015, counsel for the parties mentioned that Dr. Booeshaghi's expert report was accompanied a PowerPoint presentation of approximately 60 pages, which was produced to defendant the same day as the expert report. See ECF No. 195, at 2. Plaintiffs have submitted a 69-page slide presentation as an exhibit to their response in opposition to summary judgment. See ECF No. 162-3. It is somewhat unclear, however, whether this is the PowerPoint presentation to which the parties referred at the Pretrial and Settlement conference, as it has been submitted in the summary judgment record separately from Dr. Booeshaghi's expert report and plaintiffs have not suggested that it should be considered as an exhibit to the report. Even assuming for argument's sake that the slide presentation is properly considered an exhibit to the expert report, the page to which plaintiffs have cited in support of their design defect claim does not contain an opinion regarding the type of steel used in the rod end of the Teleflex. ECF Nos. 162, at 6 ¶ 4; ECF No. 162-3, at 43. The only evidence that plaintiffs have brought to the court's attention regarding Dr. Booeshaghi's opinion about the merits and drawbacks of Stainless Steel 303 and 316 is contained within his deposition testimony, the contents of which are not admissible at trial for the reasons stated in this opinion. ECF Nos. 162, at 6 ¶ 3-4; 162-1, at 115:11-23; 162-2, at 62:15-25. Several slides to which plaintiffs have not cited, however, do refer to the type of steel used in the Teleflex. One such slide, which is entitled "Teleflex Product Update Notice," states: "The cylinder fittings are made of corrosion resistant stainless steel . . . ." ECF No. 162-3, at 52. The other is labeled "Manufacturer Drawings" and contains a "notes" section that indicates that the "housing" and "ball" are composed of "303 Stainless Steel." Id. at 58. These slides, however, do not contain a comparison of Stainless Steel 303 and 316, nor do they mention Dr. Booeshaghi's theory referred to in his deposition that Stainless Steel 303 is not suitable for a marine environment. At most, they indicate that the Teleflex is composed of Stainless Steel 303, which cannot support a design defect claim in isolation.

by Dr. Booeshaghi's own statement that his report contains his opinions about which he will testify at trial. Furthermore, given the advanced stage of this litigation, the admission at trial of Dr. Booeshaghi's opinion pertaining to the alleged design defect, which was absent from his expert report, would certainly not be harmless. In view that Dr. Booeshaghi's September 15, 2014 expert report does not contain any statement from which a reasonable jury could conclude that the Teleflex was defectively designed, that his statements regarding Stainless Steel 303 and 316 are not included in his report and thus are inadmissible at trial, and that plaintiffs have not brought any additional evidence to the court's attention to support their design defect claim, it is hereby dismissed with prejudice.[6]

### iii.  Inadequate Instructions or Warnings

As noted with regard to plaintiffs' design defect claim, "[c]auses of action based on the doctrine of products liability . . . are governed by the general maritime law." Pietrafesa v. Board of Governors for Higher Educ., 846 F.Supp. 1066, 1071 (D.R.I. 1994); see also East River, 476 U.S. at 865 (recognizing products liability as part of general maritime law). Although courts have begun to apply the Restatement (Third) of Torts to products liability cases in admiralty, in their memoranda the parties have applied the four-prong test from non-admiralty, Puerto Rico jurisprudence to the facts surrounding plaintiffs' failure to warn claim. See ECF Nos. 155, at 16; 161, at 12. Regardless of which standard is applied, however, plaintiffs' failure to warn claim fails for the same reason: plaintiffs have not brought sufficient evidence of proximate causation

---

[6] Nothing in this opinion should be construed as an expression that the addition of Dr. Booeshaghi's deposition testimony regarding Stainless Steel 303 and 316 to his expert report would create a triable issue of fact regarding whether the Teleflex was defectively designed. Indeed, he emphasizes that the use of Stainless Steel 303 is a design choice that one of his students may have made. However, because Dr. Booeshaghi does not mention the type of steel used in the Teleflex design in his expert report, rendering his testimony on the matter inadmissible at trial, it is not necessary to determine whether such testimony would allow plaintiffs' design defect claim to survive summary judgment.

to the court's attention in the summary judgment record to create a trial-worthy dispute regarding their failure to warn claim.

As with design defect claims, in the failure to warn context admiralty law "has gradually moved from the ephemeral consumer expectations test to the more concrete risk-utility test of the Restatement (Third)." Dehring, 2013 WL 3879619, at *3; see also Guarascio v. Drake Associates Inc., 582 F. Supp. 2d 459, 465 (S.D.N.Y. 2008) (applying Restatement (Third) of Torts: Products Liability § 2(c) to failure to warn claim in suit within admiralty jurisdiction); Oswalt, 642 F.3d at 860-61 (finding that Restatement (Third) of Torts: Products Liability, rather than the Restatement (Second) of Torts, should be applied in products liability admiralty cases, including those based on a failure to warn theory). Under the Restatement (Third), "[o]ne engaged in the business of selling or otherwise distributing products who sells or distributes a defective product is subject to liability for harm to persons or property caused by the defect." Restatement (Third) of Torts: Prod. Liab. §§ 1, 15. A product "is defective because of inadequate instructions or warnings when the foreseeable risks of harm posed by the product could have been reduced or avoided by the provision of reasonable instructions or warnings by the seller or other distributor, or a predecessor in the commercial chain of distribution, and the omission of the instructions or warnings renders the product not reasonably safe." Id. § 2(c). "Under prevailing rules concerning allocation of burdens of proof, plaintiff must prove that adequate instructions or warnings were not provided." Id. § 2, cmt. i. The reasonableness of including a particular warning "rest[s] on a risk-utility assessment," taking into account both the benefits and drawbacks of including additional warnings. Id. § 2, cmt. n; see also § 2 cmt. i. While the Restatement (Third) rejects strict adherence to traditional tort categories such as negligence and strict liability, the reasonableness inquiry is intended to "achieve the same general objectives as

does liability predicated on negligence." Id. § 2 cmt. a; see also § 2 cmt. n. In order for a plaintiff to prevail, he or she must show that the defect in the warnings proximately caused the injuries in question. Id. §§ 1, 15; see also Stark v. Armstrong World Industries, Inc., 21 Fed. Appx. 371, 375 (6th Cir. 2001).

Under Puerto Rico law a "plaintiff alleging failure to warn must prove (1) the manufacturer knew, or should have known of the risk inherent in the product; (2) there were no warnings or instructions, or those provided were inadequate; (3) the absence of warnings made the product inherently dangerous; and (4) the absence of adequate warnings or instructions was the proximate cause of plaintiff's injury." Cruz Vargas v. R.J. Reynolds Tobacco Co., 348 F.3d 271, 276 (1st Cir. 2003) (citing Aponte Rivera v. Sears Roebuck, 144 D.P.R. 830 (1998)).[7] Puerto Rico products liability law "generally embraces the principles of strict products liability prescribed in the of the Restatement (Second) of Torts § 402A" and "has consistently relied upon California Supreme Court precedent when confronting issues raised by the doctrine of strict products liability." Acosta-Mestre v. Hilton Int'l of Puerto Rico, 156 F.3d 49, 54, 55 (1st Cir. 1998). Under Puerto Rico's strict liability, consumer-expectations based regime, "[t]he manufacturer's liability will depend on whether the deficiencies in the warnings or instructions render the product unreasonably dangerous, that is, more dangerous than would be expected by the ordinary consumer." Aponte, 144 D.P.R. at 841; ECF No. 163-1, at 6. The chief distinction between a strict liability and negligence in the products liability realm lies in what is necessary to show that a product is defective: "Negligence rests on a showing of fault leading to product defect. Strict liability rests merely on a showing of product defect." Restatement (Third) of Torts § 2, cmt. n. In other words, "strict liability[] mak[es] the seller subject to liability to the user or consumer even though he has exercised all possible care in the preparation and sale of the

---

[7] The docket contains an official translation of Aponte. See ECF No. 163-1.

product." Restatement (Second) of Torts § 402A (1965), cmt. a; <u>see also</u> 1 Owen & Davis on Prod. Liab. § 5:1 (4th ed.) ("Liability under § 402A is 'strict' because it is based not on the manufacturer's fault in producing a defective product, but on the frustration of consumer expectations of safety when a latent defect in a product cases physical harm.").

Notwithstanding these doctrinal distinctions, the practical differences between an application of the legal standard in a strict liability, consumer expectations regime and a risk-utility regime with regard to design defect and failure to warn claims can often be difficult to discern:

> Strict liability can be applied coherently in manufacturing defect cases because a product's defectiveness can be determined without resort to negligence-oriented cost-benefit balancing. But in both defective design and failure-to-warn cases, cost-benefit balancing is inevitably required to determine product defectiveness. Because cost-benefit balancing is also at the heart of negligence, it is no easy matter in design and warning cases to discover a difference between strict liability and negligence.

Aaron D. Twerski, <u>Doctrinal Collapse in Products Liability: The Empty Shell of Failure to Warn</u>, 65 N.Y.U. L. Rev. 265, 271-72 (1990); <u>see also</u> George Blum, et al., 63A Am. Jur. 2d Products Liability § 1022 (2015) ("[D]espite theoretical differences between strict liability and negligence, there need not be a rigid distinction between the theories in warning cases . . . ."); and 1 Owen & Davis on Prod. Liab. § 9:2 (4th ed.) ("Most jurisdictions have reached the conclusion that there is no material distinction between a claim in negligent failure to warn and strict liability failure to warn."). The distinctions are further obscured when "proof of knowledge [is] a necessary element of strict liability failure to warn"—as is true under Puerto Rico law—because "the strict liability action begins to look much like its negligence counterpart." Michael A. Pittenger, <u>Reformulating the Strict Liability Failure to Warn</u>, 49 Wash & Lee L. Rev. 1509, 1514 (1992).

It is unnecessary in this case to parse out what material differences, if any, exist between

to a failure to warn claim under admiralty and Puerto Rico law, because Puerto Rico's strict

liability regime does not obviate the requirement from admiralty law that plaintiffs must prove

that the allegedly defective warnings caused the injuries in question in order to succeed on their

failure to warn claim. Puerto Rico's strict liability failure to warn standard has been derived from

California products liability law, which also clearly requires a causal nexus between the

defective warnings in question and the plaintiff's injuries. See, e.g., Garman v. Magic Chef, Inc.,

117 Cal. App. 3d 634, 638 (Cal. App. 1981) ("Causation is a necessary element in strict liability

just as it is in negligence liability. Thus the general rules of proximate causation apply."); Groll

v. Shell Oil Co., 148 Cal. App. 3d 444, 478 (Cal. App. 1983) (noting that a product may be

"deemed defective within the general strict liability rule" if it lacks adequate warnings, but that

the plaintiff in a products liability suit has "the burden of proving that the product was defective

*and* that the defect was a proximate cause of his injuries." (emphasis added)). The inclusion of a

proximate cause element in a strict liability regime, however, is not unique to Puerto Rico and

California law: "[P]rinciples of proximate cause routinely apply in the negligence and strict

liability contexts." Babbitt v. Sweet Home Chapter of Communities for a Great Oregon, 515 U.S.

687, 711, n.* (1995) (O'Connor, J., concurring); see also, e,g, Mumley v. Lenco Industries, Inc.,

173 F.3d 845, at 2 (2d Cir. 1999); Malave-Felix v. Volvo Car Corp., 946 F.2d 967, 971 (1st Cir.

1991) ("A manufacturer is liable in tort on a theory of strict liability when it places a product on

the market, knowing that it is to be used without inspection for defects, and it has a defect that

*causes* injuries." (emphasis in original) (citing Montero Saldaña v. American Motors Corp., 107

D.P.R. 452, 508 (1978)); Van Buskirk v. Carey Canadian Mines, Ltd., 760 F.2d 481, 492 (3d

Cir. 1985) ("Proximate causation is a necessary element in proving a tort case under theories of

strict liability or negligence." (citation omitted)); Horak v. Pullman, Inc., 764 F.2d 1092, 1095 (5th Cir. 1985) ("Whether applying the law of strict liability or negligence, Texas law requires that the defect or the negligent actions must be a producing or proximate cause of the accident.").

Plaintiffs acknowledge that proximate cause is an element of a failure to warn claim, but argue that under Puerto Rico law "[t]he absence of adequate warnings provided the element of causation necessary to support this claim." ECF No. 161, at 14. However, a review of the case that plaintiffs cite in support of their assertion, Rivera et al. v. Superior Packaging, Inc., 1992 P.R.-Eng. 754,830, 132 D.P.R. 115 (1992), reveals that it does not stand for such a proposition. To the contrary, Rivera states that a plaintiff in a products liability case "must first establish *the existence of the product's defect*, and second, that *said defect was the legal cause of the damage or injuries suffered*." 1992 P.R.-Eng. 754,830, 132 D.P.R. at 126 (emphasis in original); see also Pérez v. Hyundai Motor Co., 440 F. Supp. 2d 57, 72-73 (D.P.R. 2006) ("In Puerto Rico, in order to meet its onus under strict liability principles plaintiff has the burden of proving that the product was defective *and* that said defect was the cause of the injury." (emphasis added) (citing Aponte, 144 D.P.R. at 839-40; Rivera, 1992 P.R.-Eng. 754, 830, 132 D.P.R. at 128)). Furthermore, to the extent, if at all, that Rivera is ambiguous as to whether proximate cause is a separate element from inadequate warnings in a failure to warn claim under Puerto Rico law, Aponte—which was decided approximately 6 years later—eliminated that ambiguity. 144 D.P.R. at 841-42; ECF No. 163-1, at 6. Holding that the absence of adequate warnings provides sufficient proof of causation would render the fourth, proximate cause element of a failure to warn claim under Puerto Rico jurisprudence superfluous, as the second element of such a claim is that there were no warnings or instructions or those provided were inadequate.

In a maritime personal injury case, "[a] proximate cause is one that plays a substantial role in bringing about plaintiff's injury." Robert Force & Martin J. Norris, <u>The Law of Maritime Personal Injuries</u> § 8:9 (2014). Puerto Rico jurisprudence employs a similar definition, that "[p]roximate cause requires that the damages complained of be either a direct result or a reasonably probable consequence of the act or omission at issue." <u>See, e.g.</u>, <u>Pérez v. Hyundai Motor Co.</u>, 440 F. Supp. 2d 57, 73 (D.P.R. 2006). In the failure to warn context, "[i]nadequate warnings cannot serve as a proximate cause of injuries where adequate warnings about have resulted in the same injuries." Barry A. Lindahl, 3 <u>Modern Tort Law: Liability and Litigation</u> § 27:43 (2d ed.); 1 Owen & Davis on Prod. Liab. § 9:30 (4th ed.) ("The primary issues in causation revolve around whether a different, adequate, warning would have altered the plaintiff's, or other users, behavior and prevented the injury.").

Conceding plaintiffs' point that "Santos was an invitee and not the owner or operator of the vessel when the accident occurred" and that "[h]e had no duty to read the Instructions Manual prior to boarding the vessel," there nevertheless must be some evidence tending to suggest that had better warnings been provided then the incident in question and the injuries Santos sustained would have been avoided. ECF No. 172, at 7; <u>Cf.</u> <u>Rodríguez-Ortega v. Philip Morris, Inc.</u>, Civ. No. 03-1529 (CCC), 2005 WL 2977795, at *1, 8 (D.P.R. Nov. 7, 2005) (granting summary judgment as to failure to warn claim under Puerto Rico law based on plaintiffs' failure to proffer evidence that the alleged failure to warn was the proximate cause of damage to plaintiffs). Not only has no evidence been brought to the court's attention with specific citations to the record that Santos read the Instruction Manual, plaintiffs have not rebutted the evidence that Viera, the owner of the boat, did not read the warnings in the Instruction Manual and it is uncontested for summary judgment purposes. This fact would not

necessarily be fatal if plaintiffs had other evidence from which a rational jury could find that the lack of warnings contributed to the incident. See, e.g., Johnson v. Medtronic, Inc., 365 S.W.3d 226, 234-35 (Mo. App. 2012) (finding plaintiffs satisfied their burden of producing sufficient evidence on the element of proximate causation where the maintenance inspector of an allegedly defective airplane testified that he was familiar with the contents of the maintenance manual because it had read it on prior occasions); Sorto-Romero v. Delta Int'l Machinery Corp., No. 05-CV-5172 (SJF)(AKT), 2007 WL 2816191, at *12 (E.D.N.Y. Sept. 24, 2007) (noting that "in light of Plaintiff's inability to read the warnings, Plaintiff may be able to prove causation whereby a third party may have conveyed the warning to him," where sufficient evidence to support such a finding was present). For example, plaintiffs might nevertheless have been able to prove proximate cause had the third-party mechanics on whom Viera relied to perform maintenance to the vessel possessed or read a copy of the Instruction Manual, basing the maintenance services they offered on its contents or communicating the warnings within it to Viera, or had the previous owner of the vessel read the manual and communicated the relevant contents to Viera upon selling the vessel to him, among other possibilities. However, no such evidence has been adduced.

Indulging all reasonable inferences in favor of plaintiffs, no evidence has been brought the court's attention from which the trier of fact could reasonably infer that the omission of additional warnings caused Santos's damages. Dr. Booeshaghi's expert report provides sufficient evidence from which a rational factfinder could conclude that the warnings in the Instruction Manual were lacking certain information regarding the risks of corrosion of the rod end of the Teleflex, as well as the preventive maintenance measures to be taken. See ECF No. 162-4, at 4-5. There is a gap in the record, however, regarding how the inclusion of the additional language

would have prevented the incident in which Santos sustained his injuries, as the owner of the boat did not read the Instruction Manual that Dr. Booeshaghi opines is inadequate and no evidence has been cited to the effect that the vessel's mechanics or any of its occupants on June 25, 2010 had read said manual. Without some evidence to bridge this gap, a rational finding that the alleged product defect—the lack of additional warnings and instructions in Instruction Manual—caused the boating incident on June 25, 2010 cannot be made without speculation. Thus, plaintiffs cannot defeat summary judgment of their failure to warn claim based on the proximate cause element.

Plaintiffs argue that the Supreme Court of Puerto Rico found in Aponte that the failure to read the warnings given by a manufacturer does not preclude a plaintiff from recovering on a claim that the warnings were inadequate. See ECF Nos. 161, at 14. In the relevant portion of Aponte, the Supreme Court of Puerto Rico stated:

> It is advisable to point out that the fact that plaintiff did not read the instructions has no bearing on the solution of this case. When the duty to adequately inform is breached, the fact that the plaintiff did not read the warnings or instructions does not bar a claim for damages.

144 D.P.R. at 846-47; ECF No. 163-1, at 9-10. In making this assertion, the Supreme Court of Puerto Rico relied on Rhodes v. Interstate Battery System of America, 722 F.2d 1517 (11th Cir. 1984) and East Penn Mfg. Co. v. Pineda, 578 A.2d 1113 (D.C. App. 1990). 144 D.P.R. at 870 n.15; ECF No. 163-1, at 10 n.15. Far from expressing that whether or not the warnings were read is irrelevant to a claim that the warnings were inadequate for failing to contain additional information, both Rhodes and East Penn explain that whether an individual read the warnings rendered is not *necessarily* fatal to a failure to warn claim, depending on the plaintiff's theory of liability.

In <u>Rhodes</u>, the Eleventh Circuit Court of Appeals drew a distinction between two types of failure to warn theories: "(1) failure to take adequate measures to communicate the warning to the ultimate user, [and] (2) failure to provide a warning that, if communicated, was adequate to apprise the user of the product's potential risks." 722 F.2d at 1519. It cited to numerous cases in which courts had held that "any insufficiency in the adequacy of the warning label of a product cannot be the proximate cause of the injury" when the plaintiff fails to read a warning label. <u>Id.</u> The Eleventh Circuit explained that the proposition expounded in those cases did "not necessarily preclude recovery" in that particular case. <u>Id.</u> Unlike the plaintiffs in those cases, the plaintiff in <u>Rhodes</u> did not "maintain that the warning itself, if communicated, was inadequate to apprise him of the danger. He claim[ed] his failure to read the label resulted from the defendants' negligence in communicating the warning, i.e., that other, more effective ways of communicating the battery's dangers were available and should have been employed." <u>Id.</u> In short, the "contents" of the warnings were not at issue because the plaintiff's failure to warn argument was that the manufacturer should have communicated the warning to him "in a more effective manner." <u>Id.</u> at 1520. In <u>East Penn</u>, the District of Columbia Circuit Court of Appeals recognized the distinction drawn in Rhodes, stating that "[w]*hen the failure to warn is based on the steps taken to communicate the warning*, the fact that the plaintiff never read the warning is evidence that the label was inadequate, and should not bar recovery."[8] 578 A.2d at 1124 (citing <u>Rhodes</u>, 722 F.2d at 1519 (emphasis added)).

---

[8] The D.C. Court of Appeals also noted in <u>East Penn</u> that in that jurisdiction, a rebuttable presumption exists that the user of a product would have read the warnings given and, in the absence of evidence to the contrary, the jury may presume that the defendant's product was the proximate cause of a plaintiff's injuries. <u>Id.</u> However, when the defendant does present contrary evidence, the plaintiff "may not recover absent proof that the inadequacy of the warning was at least a substantial factor contributing to his injury." <u>Id.</u> at 25. In <u>East Penn</u>, the defendant rebutted the presumption by presenting evidence that the user of the product did not read the warnings which he claimed were inadequate. The D.C. Court of Appeals explained, however, that even though the plaintiff admitted that he did not read the warning label and his claim related to the content of the warning, there was nevertheless sufficient evidence for a jury to find that the failure to warn proximately caused the plaintiff's work-related injury, because it

In <u>Aponte</u>, the plaintiff's central failure to warn theory was based in an argument that the manufacturer had not taken adequate measures or steps to communicate warnings; he alleged "that the warnings of the danger and instructions . . . were written in English and, therefore, were ineffective or nonexistent and constituted a defect of the product." 144 D.P.R. at 836; ECF No. 163-1, at 2-3. Thus, the essence of his failure to warn claim was that the manufacturer failed to communicate the warnings to him, as someone who was not fluent in the English language, in an effective manner. In response, the defendant "contended that plaintiff did not read the instructions or warnings printed on the battery, or the information they gave him when he bought it, and that he did not take any steps to have the instructions translated or explained and, therefore, his ignorance could solely be attributed to his own conduct." <u>Id.</u> In the course of the opinion, the Supreme Court of Puerto Rico asserted that:

> An analysis must . . . be made of . . . the likelihood that a particular warning will adequately alert the users or consumers to the risks of using the product, whether correctly or incorrectly. The content of the warning must be comprehensible to the average consumer. Consequently, the warnings and instructions supplied by the manufacturer must transcend language barriers.

<u>Id.</u> at 842; ECF No. 163-1, at 7. The Supreme Court of Puerto Rico in <u>Aponte</u> affirmed the holding of Superior Court, Ponce Part, which found that the defendant was liable for failure to warn, ultimately finding that the warnings were inadequate "even for an English speaker," since they lacked specificity as to a particular risk, and "that plaintiff could not be aware of the risk involved in his conduct, because the warnings advising on the possibility of an explosion were written in English." <u>Id.</u> at 837; ECF No. 163-1, at 3-4, 11.

In light of the Supreme Court of Puerto Rico's reliance on <u>East Penn</u> and <u>Rhodes</u>, which held that the failure to read warnings does not preclude recovery when the theory is based on the

---

was undisputed that one or more of his co-workers did read the warning label and the jury could have reasonably inferred that they would have communicated the warning to him, impacting his behavior. <u>Id.</u> at 1124-25.

steps to communicate a warning, the Puerto Rico Supreme Court's proclamation that "[w]hen the duty to adequately inform is breached, the fact that the plaintiff did not read the warnings or instructions does not bar a claim for damages" is best understood as meaning that the fact that warnings were not read does not always bar a claim for damages in a failure to warn claim based on the steps taken to communicate the warnings to the user or buyer. Aponte, 144 D.P.R. at 846-47; ECF No. 163-1, at 9-10. Aponte *explicitly* requires a plaintiff pursuing a failure to warn claim to prove proximate causation. Id. at 841-42; ECF No. 163-1, at 6. Likewise, California products liability jurisprudence, on which Puerto Rico's products liability law has consistently relied, uniformly requires the same showing. See, e.g., Garman, 117 Cal. App. 3d at 638; Groll, 148 Cal. App. 3d 444, 478. Interpreting Aponte to mean that whether an end user has read allegedly inadequate warnings is always irrelevant in a failure to warn claim would conflict with the fundamental principle—recognized not only in the Restatement (Third) but in Aponte itself—that a product defect is actionable only when it proximately causes a person's injuries.

Based on the evidence that plaintiffs have brought to the court's attention in the summary judgment record, plaintiff's failure to warn theory falls in the category of a claim of inadequate content, not inadequate steps or measures to convey the warnings or instructions. The opinion rendered in Dr. Booeshaghi's expert report states:

1. It appears that the loss of steering control, which resulted in the subject accident and injuries to Mr. Bernardino Santos, was due to corrosion of the rod end of the boat's hydraulic steering cylinder.
2. The subject failed hydraulic steering cylinder was a SeaStar model number HC5380 outboard splashwell mount cylinder with a rod end attachment manufactured by Teleflex.
3. The photographs of the rod end, along with the testimony of Mr. José Terrasa Nolla, depict and confirm that corrosion was the main cause for failure of the subject hydraulic steering cylinder rod end.

4. The subject Teleflex hydraulic steering cylinder was manufactured in 2002.
5. As a part of standard hierarchy in engineering design and manufacturing, the product manufacturer is required to warn against all foreseeable hazards such as the hazards associated with the subject hydraulic steering cylinder rod end's interchangeability, corrosiveness, preventive maintenance, and the risks associated with its failure.
6. The 2000 Revision M of the SeaStar/Teleflex Installation Instructions And Owner's Manual was in effect at the time of manufacturing of the subject hydraulic steering cylinder.
7. The 2000 Revision M of the SeaStar/Teleflex Installation Instructions And Owner's Manual does not contain specific references, warnings, and/or requirements related to the hydraulic steering cylinder rod end and its interchangeability, corrosiveness, preventive maintenance, and the risk of hazards associated with its failure.

ECF No. 162-4, at 4-5. Essentially, Dr. Booeshaghi's opinion is that the standard of care requires additional language about all foreseeable hazards that was not included in the Instruction Manual. That is, the Instruction Manual should have contained additional content about the rod end's interchangeability, corrosiveness, preventive maintenance, and the risks associated with its failure. A reading of Dr. Booeshaghi's opinion does not support a claim that the Teleflex was defective because defendant failure to take adequate measures, such as including instructions in a different place or in a different language, to communicate the warnings. Aside from Dr. Booeshaghi's expert opinion, plaintiffs have not brought any additional evidence to the court's attention to support their claim that the Teleflex was defective due to inadequate warnings or instructions. Thus, even assuming that Puerto Rico law governed the failure to warn cause of action, the language on which plaintiffs rely from Aponte does not resolve the matter of proximate causation in this case.

Under maritime law "[t]he plaintiff must . . . bring forward some evidence of actual cause" between the product defect and the injuries in question in order to succeed on a products

liability claim. <u>Stark</u>, 21 Fed. Appx. At 376. Stated differently, the plaintiff has the burden of proving proximate causation. Even assuming for argument's sake that the parties are correct in their implicit assumption that Puerto Rico law applies to the failure to warn claim in this case, plaintiff also has the burden of proving proximate causation between the product defect and the injuries in question under Puerto Rico law. Given that the summary judgment record establishes that Viera did not read any of the warnings SeaStar provided, and given that no evidence of an alternative causal link has been identified such that the jury could rationally infer the requisite proximate causation, regardless of whether maritime or Puerto Rico law is applied SeaStar's motion for summary judgment is granted with respect to plaintiffs' failure to warn claim.

### C.  Negligent Infliction of Emotional Distress Claims

Defendant contends that under federal maritime law, the Santos Family Members cannot recover for negligent infliction of emotional distress because they were not present at the time the incident occurred. ECF No. 155, at 8-9. In light of the conclusions reached regarding plaintiffs' manufacturing defect, design defect, and failure to warn claims, whether the Santos Family Members can recover damages for negligent infliction of emotional distress is moot, as all of their claims have been dismissed on other grounds. Assuming for argument's sake that one or more of their products liability claims survived summary judgment, however, they would not be permitted to recover for emotional damages for the reasons that follow.

Although the First Circuit Court of Appeals has declined to consider whether federal maritime law precludes a state law cause of action for negligent infliction of emotional distress (see <u>Fairest-Knight v. Marine World Distributors, Inc.</u>, 652 F.3d 94, n.7 (1st Cir. 2011)), the consensus among courts that have addressed this matter is that negligent infliction of emotional distress is a cognizable claim under admiralty, and thus general admiralty law governs liability,

precluding state law to the extent that it conflicts with admiralty rules. See Nieto-Vincenty v. Valledor, 22 F.Supp.3d 153, 159 (D.P.R. 2014); Barker v. Hercules Offshore, Inc., 713 F.3d 208, 231 (5th Cir. 2013); Chaparro v. Carnival Corp., 693 F.3d 1333, 1337-38 (11th Cir. 2012); Carrier v. Jordaan, 746 F. Supp. 2d 1341, 1348 (S.D. Ga. 2010); Stepski v. M/V NORASIA ALYA, No. 7:06-cv-01694, 2010 WL 6501649, at *7 (S.D.N.Y. Jan. 14, 2010); Zorrilla-Balseiro v. Marina Puerto Chico, Inc., Civ. No. 08-1183 (CCC), 2009 WL 866867, at *2 (Mar. 30, 2009); Fernández v. Aliff, Civ. No. 06-1301 (DRD), 2008 WL 2026010, at *2 (May 8, 2008); Tassinari v. Key West Water Tours, L.C., 480 F.Supp.2d 1318 (S.D. Fla. 2007); Isham v. Padi Worldwide Corp., CV. Nos. 06-00382 DAE-BMK, 06-00386 DAE-BMK, 2007 WL 2460776, at *17 (D. Haw. Aug. 13, 2007); Kunkel v. Motor Sport, Inc., 349 F.Supp.2d 198, 207 (D.P.R. 2004); Complaint of Clearsky Shipping Corp., 1998 WL 560347, at *2 (E.D. La. Aug. 28, 1998); Chan v. Society Expeditions, Inc., 39 F.3d 1398 (9th Cir. 1994).

Despite the consensus among courts hearing admiralty cases that negligent infliction of emotional distress claims are governed by substantive admiralty law, it is somewhat less clear whether the "physical injury or impact," the "zone of danger" test, or the "bystander proximity" theory applies to such claims:

> Under the 'physical injury or impact' test, a plaintiff may recover damages only if she experiences physical contact or injury in addition to the emotional distress. Under the 'zone of danger' standard, a plaintiff need not experience physical injury or impact to recover damages so long as the plaintiff witnesses the endangerment of another and is also placed at risk of physical injury due to the defendant's negligence. Under the 'bystander proximity' theory, a plaintiff may recover for emotional damages if he or she: (1) is physically close to the scene of the accident; (2) directly witnesses the incident; and (3) is a close relative of the victim.

Peemoller Sultan v. Pleasure Craft Contender 25', 139 F.Supp.2d 230, 235-6 (D.P.R. 2001) (internal citations omitted). In Chan, one of the first cases to consider the issue, the Ninth Circuit Court of Appeals declined to decide whether general maritime law should adopt the "physical injury or impact" rule, the "zone of danger" test, or the "bystander proximity" theory. 39 F.3d at 1410. Subsequent to Chan, however, many courts sitting in admiralty have chosen to apply the "zone of danger" test to negligent infliction of emotional distress claims, "which allows recovery if a plaintiff is 'placed in immediate risk of physical harm by [defendant's negligent] conduct.'"[9] Chaparro, 693 F.3d at 1337-38 (citing Stacy v. Rederiet Otto Danielsen, A.S., 609 F.3d 1033, 1035 (9th Cir. 2010)); Williams v. Carnival Cruise Lines, Inc., 907 F.Supp. 403, 406 (S.D.Fla.1995)); see also Nieto-Vincenty, 22 F.Supp.3d at 159; Peemoller Sultan v. Pleasure Craft Contender 25', 139 F.Supp.2d 230, 235-6 (D.P.R. 2001). Others have continued to avoid the question of which of these three tests applies, because regardless it is clear that under maritime law "a plaintiff may not recover damages for negligent infliction of emotional distress for injury sustained by another unless he or she was near the scene of the accident." Peemoller Sultan, 139 F.Supp.2d at 235-6 (citing Chan v. Society Expeditions, Inc., 39 F.3d 1398 (9th Cir. 1994); Yballa v. Sea-Land Servs., Inc., 919 F.Supp. 1428, 1435 (D.Haw. 1995); Williams v. Carnival Cruise Lines, Inc., 907 F.Supp. 403, 406 (S.D.Fla. 1995)); see e.g., Barker, 713 F.3d at 231; Stepski, 2010 WL 6501649, at *7; Zorrilla-Balseiro, 2009 WL 866867, at *2; Fernández, 2008 WL 2026010, at *2.

---

[9] The "zone of danger" test has prevailed among these courts based on the United States Supreme Court's decision in Consol. Rail Corp. v. Gottshall, 512 U.S. 532, 544 (1994), which applied the "zone of danger" test to tort claims brought under the Federal Employee's Liability Act. See, e.g., Chaparro, 693 F.3d at 1337-38 ("[F]ederal maritime law has adopted Gottshall's application of the 'zone of danger' test . . . .); Nieto-Vincenty, 22 F.Supp.3d 153 (applying zone of danger test as articulated in Gottshall to admiralty claim and noting that "[o]ther federal courts have followed the Supreme Court's decision in Gottshall and applied the 'zone of danger' test.").

It is uncontested for summary judgment purposes that the only individuals aboard the vessel on the date of the incident were Santos, Colón, Sándoz, and Mercado, and that the incident occurred during the course of the voyage that day. Defendant also proposes as an uncontested fact that "[t]he [Santos] Family Members were neither aboard the vessel on June 25, 2010, *nor were they present to witness the accident and / or incident that took place on June 25, 2010*." ECF No. 156, ¶ 9 (emphasis added). However, as plaintiffs point out defendant does not support the latter portion of this assertion with a citation, in violation of Local Rule 56(b), which requires that each fact in a proposed statement of material facts be followed by a citation to the specific page or paragraph of identified record material supporting the assertion. Because of SeaStar's failure to cite to evidence that the Santos Family Members were not present to witness the events in question, plaintiffs request that the court allow their negligent infliction of emotional distress claims to survive defendant's motion for summary judgment. ECF No. 161, at 4. Disregarding this unsupported proposed fact, it is still clear from the uncontested facts that none of the Santos Family Members were aboard the vessel when the incident occurred, but it nevertheless remains possible, among other things, that one or more of them witnessed the incident from the shore or from another vessel or that their safety was somehow jeopardized by the incident although they were not aboard the vessel.

At the summary judgment stage "[t]he movant must put the ball in play, averring 'an absence of evidence to support the nonmoving party's case.' The burden then shifts to the nonmovant to establish" the existence of a genuine and material issue of fact. Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990) (citing Celotex, 477 U.S. at 315; Anderson, 477 U.S. at 248). Defendant clearly and explicitly moves for summary judgment as to the Santos Family Members' negligent infliction of emotional distress claims, arguing that they were not close

enough to the scene to witness the incident on June 25, 2010 in which Santos sustained injuries. ECF No. 155, at 8-9. In response, plaintiffs have not argued that the Santos Family Members were in fact near to the scene of the incident on June 25, 2010, but only request that the claim survive summary judgment because defendant has not provided evidence to support the proposed fact that the Santos Family Members were not present to witness the accident, as required by Local Rule 56. ECF Nos. 161, at 3-4; 172, at 1-2. Not only have plaintiffs not cited to any evidence to suggest that one or more of the Santos Family Members saw the incident and / or were present at or near the scene, a review of the second amended complaint reveals that plaintiffs do not allege that the Santos Family Members were in close proximity to the scene of the incident, such that they were in risk of physical harm, as required under the "zone of danger" test, that they sustained a physical impact or injury, as is necessary to recover under the "physical impact or injury" rule, or even that they witnessed the events at issue, which could entitle them to relief under the more lenient "bystander proximity rule". See ECF No. 82. For issues where the nonmoving party bears the ultimate burden of proof, that party cannot merely "rely on the absence of competent evidence, but must affirmatively point to specific facts" in the record "that demonstrate the existence of an authentic dispute." McCarthy, 56 F.3d at 315. Regardless of which test is applied, the applicable proximity factor is an element of a negligent infliction of emotional distress claim that plaintiffs must prove at trial in order to prevail on that cause of action under maritime law.[10] See Nieto-Vincenty, 22 F.Supp.3d at 160 (granting summary judgment were plaintiffs did "not even allege—much less put forth evidence" that the plaintiff was placed in immediate risk of physical harm); and Carrier, 746 F. Supp. 2d at 1348 (dismissing negligent infliction of emotional distress claim based on physical impact theory where the

---

[10] Although all reasonable inferences are made in the nonmovant's favor, for summary judgment purposes the court may disregard unsupported speculation.

plaintiffs did not allege in the complaint that they sustained a physical impact or injury). Because plaintiffs' local cause of action for negligent infliction of emotional distress is precluded as it conflicts with the maritime standard barring recovery for emotional distress unless an individual is near the scene of an accident, and they have not presented evidence that the Santos Family Members were in fact near the scene of the incident and / or saw it unfold and have not so much as alleged or argued as such, defendant's motion for summary judgment as to the Santos Family Members' negligent infliction of emotional distress claims is granted and such claims are dismissed with prejudice.

### D. Spoliation

Defendant's final argument is that sanctions are warranted due to plaintiffs' "inability to protect or maintain its sole and indispensable evidence," namely, the Teleflex. ECF No. 155, at 22-24. SeaStar asserts that there are a "number of issues" relevant to its defense that "can only be resolved through the physical inspection of the missing product itself." <u>Id.</u> at 22. Acknowledging that SeaStar and its experts have been unable to inspect the Teleflex, defendant has not shown that sanctions for spoliation are justified in this case. The summary judgment record establishes that Viera, not Santos or any of the other plaintiffs, was the owner of the boat in question. Defendant does not allege, and no evidence has been brought to the court's attention, that plaintiffs were in control of the boat or the Teleflex after the incident occurred, such that they did not adequately safeguard the evidence. Furthermore, aside from the uncontested fact that the Teleflex was "stolen" and is "nowhere to be found," no evidence has been brought to the court's attention regarding the circumstances surrounding the disappearance of the Teleflex such that a finding could be made that one or more of the plaintiffs are responsible. As defendant points out, it is unnecessary for the court to find that plaintiffs acted in bad faith in order to

impose sanctions for spoliation, but plaintiffs do at least need to have been responsible for its absence. See Sacramona v. Bridgestone / Firestone, Inc., 106 F.3d 444, 447 (1st Cir. 1997) (noting that the district court is permitted to consider sanctions if evidence "is mishandled through carelessness" even absent bad faith).

As a sanction for the unavailability of the Teleflex, SeaStar requests that the court dismiss the claims against it with prejudice or "grant such other . . . relief as the [c]ourt may deem appropriate." ECF No. 155, at 25. To the extent that defendant requests dismissal, the request is moot in light of the dismissal of plaintiffs' manufacturing defect, design defect, and failure to warn claims for the reasons stated within this opinion. Addressing defendant's spoliation argument on the merits, however, given the lack of evidence, or even allegations, as to how any specific actions or omissions on the part of plaintiffs contributed to the disappearance of the Teleflex, SeaStar's request for sanctions against plaintiffs is denied.

### V. CONCLUSION

For the foregoing reasons, SeaStar's motion for summary judgment is **GRANTED**. All claims against SeaStar are hereby dismissed with prejudice.

IT IS SO ORDERED

In San Juan, Puerto Rico, this 13th day of March, 2015.

s/Marcos E. López
U.S. Magistrate Judge